Good morning, Your Honor. With respect to Petitioner's request for a reversal of the denial of asylum and order of deportation, I'd like to focus my arguments on just a few points this morning. First, we respectfully submit that Petitioner suffered past persecution as a child and as an adult. As a child, family members, including his cousin and uncle, were buried in a mine, and he witnessed these. He also witnessed the bombing of his village, as well as the murder of a close family and neighbor friend. And I'd also like to discuss the persecution he suffered as an adult. When he returned to Guatemala after fleeing for Mexico, military commissioners repeatedly came to his home and indicated that they would come and take him away, that they were going to rely on the division, which makes people disappear, and that if he refused to report for military service, they would place him into a pit in the ground called a calabozo and feed him by throwing food and water into the ground. He spent seven years in Mexico with relatives? He spent seven, yes. He was by himself. The rest of his family had stayed because he had younger brothers and sisters, and he had fled. What impact does that have on this matter? Well, I don't think it really does have an impact because the issue is that when he returned to Guatemala, he continued to receive threats, and those threats were based on his refusal to join the compulsory military service. It was a full seven years, wasn't it? It was.  He did come back a few times to visit his family, and as you may recall from the record, he would quickly have to flee again because every time he came back, the military commissioners would come and visit his home, and he grew fearful that there would be consequences if he stayed. In any event, there's no issue of permanent relocation in this case? He was in Mexico for seven years, and then he … Let me ask the question another way. Has the government at any point in the proceeding raised the issue of permanent relocation? No, it has not. Thank you. And it's February 6, 2009, Rule 28J submission. The government has conceded past persecution based on the suffering he suffered as a child, so I'd like to now move on to the well-founded fear of future persecution. Given that Respondents conceded past persecution, we submit that they have failed to meet their burden to overcome the presumption, and the only basis that they've relied on are generalized country conditions regarding the 1996 peace accords and the improvement there. There has been absolutely no individualized analysis of how the change conditions will affect this applicant's situation. And this applicant, as I noted, is in a unique situation based on suffering as a child and as well based on the continued threats he was receiving for refusing to serve in the military. There has been … Is he a Mayan? Yes, Mayan conjugal. As I recall, the IJ actually noted that they were a much persecuted minority. That's correct. And there's been no consideration whatsoever of his impact returning to Guatemala, not only as a Mayan, but as somebody who fled the country because they refused to join military service and as a rejected asylum applicant. There was evidence, wasn't there, that they no longer are conscripting? I think that is true, but the government is still in control of the military. And there's just been no inquiry or analysis whatsoever of what happens to refugees who are forced to return to Guatemala. And in this situation, the person fled Guatemala just because of his refusal to concede to the government's demands to serve in the military. And indeed, this court has previously held that it's appropriate for the government to give due consideration to evidence that the Guatemalan government persecutes its citizens who leave the country without authorization or seek asylum in another country. This is Azorio v. Ins18 F3D 1017 in 1994. That's all I have this morning. Thank you. You may reserve the remainder of your time. Thank you. If it pleases the Court, my name is Don G. Scroggin, and I represent the United States Attorney General in this case. This is the fourth time the Petitioner has been allowed to have a full and fair hearing of his case. His asylum application was first heard by an asylum officer when he entered the country in 2001, who declined to grant asylum even though 30 percent are granted in such interviews. His case was heard before an immigration judge, and statistically, more than half of asylum applications are granted with such affirmative applications as in this case. The immigration judge reasonably found that he had failed to carry his burden of proof in this case. His case was then reviewed by the Board of Immigration Appeals at the third level, which also declined to grant asylum. Petitioner has three bases for his case. At any point in any of the proceedings that you've just listed, did any officer of the government apply the standard for past persecution based on the Petitioner's age? No, they did not, Your Honor. And it's a different standard, isn't it? It is a different standard. This Court articulated a new rule in Hernandez-Ortiz, and Respondent has conceded that Petitioner has established past persecution based not on what happened to him, but on based on what happened to his children. So the issue before the Court is whether the presumption of a well-founded fear of future persecution that Petitioner is due based on that finding of past persecution has been rebutted by evidence in the record. That's really the central core of the issue here. The three bases upon which that presumption must be rebutted are his fear of being identified as a guerrilla, his identity ethnically as a Mayan, and his desire not to serve in the military to avoid the draft in Guatemala. The immigration judge reasonably found, based upon evidence in the record, that the fundamental changes that had occurred with the Peace Accords of 1996 essentially removed the first two grounds, that the guerrillas are now serving the government. They are Cabinet officers and judges. The Peace Accord of 1996 was a sea change in Guatemala. And this Court, I will – has recently, as recently as last year, has looked at this situation with even more recent country reports than are in this case. If I can interrupt for just a second, I'm happy to accept your concession of past persecution. But I see on page 10, the heading of your argument is, the IJ properly concluded that the lack of harm to Andres doomed his claim of past persecution, and that changed country conditions foreclosed his claim of future. Did you send in a letter or something? Yes, I'm sorry. The letter was sent to the Court last week. Okay. A 28-J letter has been filed to the Court. I'm not sure it has reached us. I didn't get it. That's fine. I not only filed it, I also e-mailed it and filed it with Ms. Reed. Okay. It has been filed. And I told everyone's chief of staff. Okay. I didn't get it in my package. I wasn't sure what else I could do. It's straightened out now anyway. We have conceded. We have conceded. We appreciate the government. Because it seemed to the government that it was best to set aside this issue and not wrangle over something, while Respondent, as you may know, filed a petition for rehearing on that case. We thought it was wrongly decided, quite candidly. Nonetheless, we recognize it is the controlling precedent here. And so we don't want to discuss or argue with you about that. Okay. And it's not necessary for the resolution of this case, which can easily be disposed of on the basis of the alternative finding of the immigration judge, where he reasonably found that the presumption of a well-founded fear was rebutted by the preponderance of the evidence. There's an argument that the change conditions weren't tailored to his circumstances. How do you – how is that supposed to work? Well, I think that's a very good question, Your Honor. You heard Petitioner's counsel this morning say that these are – these country reports are just generalized. It's true. Country reports don't list people's names. But this Court has addressed very directly in the case of Soe, S-O-W-E. And I apologize. I will provide the Court a new 28J letter, a second 28J letter, with some additional cases that I will refer to this morning. The case of Soe was decided in 2008. It is 538F3-1281, which this Court addressed specifically. What does he mean by individualized determination when you're dealing with country reports, which, by their very definition, are broad-based? What the Court said was that, first of all, the Department of State country reports are the most appropriate – this is a quote – and perhaps the best resource for information on political situations in foreign nations. And with regard to the individualized finding, they said, where the immigration judge rationally construes an ambiguous or somewhat contradictory country report, and if I may digress for one moment, country reports are credible documents. This Court has found them to be credible and reliable. They're not advocacy documents. They do contain pro and con. That's why the Court has held that the immigration judge is the proper person to rationalize and construe all of the evidence that's in the country report. So I may continue the quote from the Soe S.O.W.E. case of 2008, where the immigration judge rationally construes an ambiguous or somewhat contradictory country report and provides an individualized analysis of how change conditions will affect the specific petitioner's situation. Substantial evidence will support the agency determination. What this means is that the country report deals with the specific claims of this petitioner, that he's a Mayan and discriminated ethnically, and it deals with the specific claims that he would be seen to have guerrilla sympathies. And as for the third, this case essentially boils down to a case of avoiding military recruitment, and the Court – this Court has already held that it's not persecution. If you couple the fact of his past persecution with the fact that he's still on the Army list, with the fact that he is Mayan, with his testimony that he was afraid to go back because he's on the Army list, and what else did he say, that friends that – that the Army is still murdering people and he's heard reports. If you put all that together – I would remind the Court that Petitioner's burden before this Court is different than his burden before the immigration judge. The question here is not whether another adjudicator might or could reach a conclusion. No, no. But I think the question – the question, though, ultimately, is whether or not the government showed changed conditions. Correct. And don't you have to measure that? I may be mistaken, but I thought you had to measure that in terms of the position of this particular – But Petitioner's burden before this Court is to show that the facts are so overwhelming that they compel a contrary conclusion. Now I understand that. That's – that's – that's distinct because we have a judgment that has been made and we're now before the Court. And for that – Yes, but I'm asking you whether, if you take the fact of his Mayan ethnicity, his – his past experience, the fact that – that he's on the list, that people are still being murdered, the lack of any adverse credibility finding, he says – and he testifies – I know my – I'm afraid to return. I know my life would be in danger. I know many cases where people return and they have problems and the army is still murdering people. So the question is, isn't that pretty compelling? I would – I would argue that no, it is not, because each one of those three elements vanishes in light of the – the evidence in the record. If you look at the guerrilla evidence, the Supreme Court of the United States in Ventura actually disposed of that almost categorically by saying, and I quote, the bulk of the 1997 country report makes clear that considerable change has occurred in Guatemala. And this Court has held similarly. So I think we should set aside the guerrilla. You don't – we can't add up zeros and come up with a positive sum. If guerrilla is set aside, let us turn now to the Mayan component that you addressed. And in Mayan, I would look to two cases that this Court – and I apologize, I will – I will provide a 28-J case for these, but these are recent cases and I thought it would be of interest to the Court to know what is going on in Guatemala. The Court has addressed specifically Mayan ethnic persecution and has found these are unpublished cases, but they're post-2008. They're not controlling precedent, I realize, but they are suggestive of the analysis that is appropriate in approaching using country reports to rebut the assumption of a well-founded fear. I would look first to the case of Ramos Clemente, and I will in which this Court held that the immigration judge found that the forms of serious persecution of indigenous people were in the context of the going war, which has now ended, the sea change that occurred in 1996. The State Department reports, and I'm quoting from this Court's decision, indicate that since the peace accords were signed in 1996, commissions have been established and there's other improvements. Sotomayor, you've used your time. Could you give us the site to that case again? Yes, I will. The Ramos Clemente case. Now, there's a form that you can fill out and give to the Court. I will give you that. She'll give it to us. The second case — Give it to me. I am asking you. Okay. The Ramos Clemente's case is 267 Fed APPX 643, and the second case to which I would refer — Those are both unpublished. Unpublished cases, yes, they are. They're post-2008, so they're citable. As I say, they're not controlling precedent, but they are suggestive in showing that this Court has addressed these two questions. And I would simply, if I might, just have 30 seconds to sum up by saying that no in response to your question, you can't add up three things, each of which has been resolved to not be substantial and come up with anything that is itself substantial, and the petition for review for that reason should be denied. It's a reasonable decision, and there's no compelling reason to reverse it. Thank you. And I will provide a 28-J letter. Thank you. Thank you. Just four quick points. With respect to credibility, the IHA did find the applicant to be very credible, so we urge the Court to fully credit his testimony. And the Court understands the argument exactly. We're not arguing that because there's a general — there may no longer be a general pattern of persecution against Mayans, that by merely being part of that group, he's going to be persecuted. The argument really is that the death threats he received as an adult were based on his refusal to serve in the government and his deportation back to Guatemala after having had that claim rejected and being a Mayan. And I'll point to the administrative record at 1873, where it indicates that the military, civil defense patrols, the very group that Andres refused to serve and have been reasserting themselves, and these groups do resort to violence to maintain control over the community. And the immigration service in Guatemala is controlled by the military, and it's very likely that they're going to discover that he had fled Guatemala to avoid the recruitment campaigns and to avoid persecution. Thank you very much. Thank you, Counsel. Wilson Sonsini took this on as pro bono? Correct. Well, thank them for that, especially in this environment. The case just argued is submitted for decision.
judges: Schroeder, Canby, Hawkins